Lori K. WESEMAN, et al.

v.

MEEKER COUNTY, et al.

Civ. No. 4–86–398.

United States District Court,
D. Minnesota,
Fourth Division.

May 20, 1987.

Mark Arth, Arth & Huusko, St. Paul, Minn., for plaintiffs.

Peter M. Ackerberg, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants Cedric F. Williams and State of Minn.

Clifford M. Greene and Bruce Little, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for W. Edward Myers and Bruce P. Johnson.

R. Terri Mandel and James A. Karigen, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for Meeker County and Meeker County Dept. of Court Services.

ROSENBAUM, District Judge.

Lori Weseman was caught shoplifting in Willmar, Minnesota, in January, 1984. Her arrest led her into Minnesota's juvenile court system. Plaintiffs allege that system violated their civil rights. This Court's jurisdiction is properly invoked pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has pendent jurisdiction over plaintiffs' state law claims.

This matter is currently before the Court on defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) or, in the alternative, for summary judgment pursuant to Rule 56. In determining these motions, the Court has considered matters outside the pleadings and therefore treats defendants' motions as if for summary judgment. *See* Rule 12(b), Fed.R.Civ.P. Plaintiffs, in their memoranda, acknowledge that this characterization of defendants' motions is appropriate. A hearing was held on August 27, 1986. Based on the files, records, and proceedings herein, the Court grants defendants' motions.

## I. *Facts*[1]

In January, 1984, Lori Weseman (Ms. Weseman or Weseman), then age 16, was caught shoplifting clothing from various stores in Willmar, Minnesota. In May, 1984, Ms. Weseman appeared before the Honorable Cedric Williams, Meeker County Juvenile Court Judge, and admitted she had committed an act of delinquency and had violated the Minnesota misdemeanor shoplifting statute. *See* Minnesota Stat-

utes, Section 609.52, subds. 2(1) and 3(5) (1984). Judge Williams referred the case to probation officer Tamara Thompson for an investigation prior to disposition.

Ms. Thompson rendered a predispositional report indicating that Weseman's parents were separated. The report stated that Weseman resided with her father and was satisfied with that living arrangement. It also indicated that serious discord existed between her parents, and that Weseman had a "chaotic" relationship with her mother. The report further showed a history of family violence, including some unspecified battering by Weseman's father. It appeared that Weseman and both of her parents were actively involved in counselling programs.

In July, 1984, Judge Williams made a finding of delinquency in Weseman's case. He rejected Thompson's recommendation that Weseman's case be continued for one to two ninety-day periods, with temporary probationary supervision. Instead, he ordered that custody of Weseman be transferred to the Minnesota Commissioner of Corrections so that she could be placed in a correctional facility designated for juvenile delinquents. Transfer was stayed, however, and Weseman was placed under probationary supervision. Under the terms of this stay, she was ordered to live with her mother for seven days every two weeks and to follow rules regarding curfew, counselling, and obedience to both parents. If this arrangement failed, Weseman was to be placed in a foster home. The arrangement failed almost immediately.

In August, 1984, probation officer Thompson placed Weseman into foster care because of a break-down in Weseman's relationship with her mother and as a result of problems with rules relating to visitation and curfew. The day following Weseman's placement in foster care, Judge Williams, under the authority of Rule 30.06, Minnesota Rules of Juvenile Court Procedure (Minn.R.Juv.Ct.P.), issued an *ex parte* dispositional order placing Weseman in foster

---

1. For a detailed discussion of the facts relevant to this case, see *In the Matter of the Welfare of* *L.K.W.,* 372 N.W.2d 392 (Minn.App.1985).

care and providing for continued probationary supervision.

In September, 1984, Weseman's attorney requested a formal hearing, pursuant to Minn.R.Juv.Ct.P. 30.07, subd. 2, to review Weseman's *ex parte* disposition. A hearing was held in late October, following which Judge Williams amended his dispositional order ending foster care placement. Instead, he ordered that Weseman continue probationary supervision and again required that she spend seven of every fourteen days with her mother. Judge Williams ordered this disposition despite the recommendation of Weseman's current probation officer, Bruce Johnson. It was Johnson's recommendation that Weseman remain in foster care.

In April, 1985, (15 months after the juvenile shoplifting incident) Johnson learned that contrary to Judge Williams' order, Weseman had ceased living with her mother in mid-February. This led to another dispositional hearing in April, 1985, at which time Judge Williams followed probation officer Johnson's recommendation and placed Weseman at St. Croix Camp, a custodial state correctional facility for juvenile delinquents. She was sentenced to 90 to 100 days at a cost of $6,500 to her parents.

Weseman appealed Judge Williams' order placing her at the St. Croix Camp. The Minnesota Court of Appeals, in *In the Matter of the Welfare of L.K.W.*, 372 N.W.2d 392 (Minn.App.1985), reversed that order and dismissed her case. In a long, poignant opinion, Minnesota's appellate court held Weseman's three month confinement to a juvenile correctional facility to be excessively severe considering the degree of her delinquency. *Id.* at 398. The Court found confinement was not necessary to restore Weseman's law-abiding conduct nor was it in her best interest. *Id.* at 398, 400. The appellate court, in addition, criticized Judge Williams' failure to make findings regarding the dispositional alternatives he considered as mandated by Minnesota Statutes, Section 260.185, subd. 1, and Minn.R. Juv.Ct.P. 30.05. *Id.* at 400–401. Judge

Williams was also criticized for not indicating why confinement was the preferred choice, and how that choice furthered Weseman's interests and needs. *Id.* The Court found Judge Williams' failure to make such findings reversible error. *Id.* at 401.

Ms. Weseman and her father David Weseman have now instituted this action against Meeker County (County), Meeker County Department of Court Services (Court Services), the Honorable Cedric F. Williams, retired Juvenile Court Judge for Meeker County, and Bruce P. Johnson, head probation officer for Court Services,[2] alleging various federal civil rights and state law claims as a result of the circumstances outlined above. Defendants have moved for summary judgment. The Court grants defendants' motions.

## II. *Discussion*

Defendants are before the Court seeking summary judgment. In considering a motion for summary judgment, the Court has in mind the directive that defendants are entitled to summary judgment only if no genuine issue exists as to any material fact. Rule 56(c) of the Federal Rules of Civil Procedure. If the evidence is such that a reasonable jury could not return a verdict for the nonmoving parties, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 2510, 2511, 91 L.Ed.2d 202 (1986). Although the movants have the burden of showing there is no genuine issue of fact, the nonmovants must set forth specific facts showing there is a genuine issue for trial; they may not rest upon mere allegation or denials of their pleading. *Id.* 106 S.Ct. at 2514; *Celotex Corporation v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the evidence of the nonmovants is to be believed, and all justifiable inferences are to be drawn in their favor. *Anderson,* 106 S.Ct. at 2513.

**2.** Plaintiffs, in their complaint, also name W. Edward Myers, Assistant Meeker County Attorney, and the State of Minnesota as defendants. On August 27, 1986, the parties stipulated to the dismissal with prejudice of Myers as a defendant. In addition, at the hearing plaintiffs moved to dismiss the State of Minnesota as a defendant. That motion was granted.

**A. Plaintiffs' Claims Under 42 U.S.C. §§ 1981, 1985, and 1986**

■ Plaintiffs base certain of their claims on 42 U.S.C. §§ 1981, 1985, and 1986. Section 1981 redresses discrimination based on race, alienage, ancestry, or ethnic characteristics. *Saint Francis College v. Al-Khazraji,* — U.S. —, 107 S.Ct. 2022, 94 L.Ed.2d — (U.S.1987); *Cariddi v. Kansas City Chiefs Football Club,* 568 F.2d 87, 88 (8th Cir.1977); *Williams v. Edward Apffels Coffee Co.,* 792 F.2d 1482, 1484 (9th Cir.1986); *See also, Shaare Tefila Congregation v. John William Cobb,* — U.S. —, 107 S.Ct. 2019, 94 L.Ed.2d — (U.S.1987); *McIntosh v. Ark. Rep. Party-Frank White Elec. Comm.,* 766 F.2d 337, 340 (8th Cir.1985). Plaintiffs have made no allegations of discrimination based on race, alienage, ancestry, or ethnic characteristics, nor have they presented to the Court any evidence indicating such discrimination. Therefore, their cause under 42 U.S.C. § 1981 must fail.

Plaintiffs' complaint asserts that defendants conspired to deprive them of their constitutional rights. They bring this conspiracy claim pursuant to 42 U.S.C. § 1985. In general terms, Section 1985 proscribes five different types of conspiracies: (1) conspiracies to interfere with the performance of official duties by federal officers (Section 1985(1)); (2) conspiracies to interfere with the administration of justice in federal courts (first clause of Section 1985(2)); (3) conspiracies to interfere with the administration of justice in state courts (second clause of Section 1985(2)); (4) private conspiracies to deny any person enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws" (first clause of Section 1985(3)); and (5) conspiracies to interfere with the right to support candidates in federal elections (second clause of Section 1985(3)). *Kush v.*

*Rutledge,* 460 U.S. 719, 724, 103 S.Ct. 1483, 1486, 75 L.Ed.2d 413 (1983); *Harrison v. Springdale Water & Sewer Com'n,* 780 F.2d 1422, 1429 (8th Cir.1986); *Wisdom v. Dept. of Housing and Urban Development,* 713 F.2d 422, 425–26 (8th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984).

■ Three of the five categories—the first, second, and fifth—relate to federal institutions and processes. *Kush,* 460 U.S. at 724, 103 S.Ct. at 1486; *Harrison,* 780 F.2d at 1429; *Wisdom,* 713 F.2d at 426. Plaintiffs make no allegation of a federal nexus with defendants' purported conspiracy. Any claim under Section 1985, therefore, must fall within either the third or fourth category. *Harrison,* 780 F.2d at 1429. Plaintiffs, however, have failed to allege that they are members of a class which suffers from invidious discrimination, nor have they presented any evidence which indicates such membership. They do not, then, make out a viable case under either the third or fourth category and their Section 1985 claim must fail. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971);[3] *Harrison,* 780 F.2d at 1429–30. Further, because recovery under Section 1986 is dependent on the existence of a claim under Section 1985, *Coleman v. Garber,* 800 F.2d 188, 191 (8th Cir.1986); *McIntosh,* 766 F.2d at 340, plaintiffs' Section 1986 claim also must fail.

Summary judgment is granted to defendants on plaintiffs' claims under 42 U.S.C. §§ 1981, 1985, and 1986.

**B. Plaintiff's Claims Under 42 U.S.C. § 1983**

**1. Judge Cedric Williams**

■ Judge Cedric Williams claims he cannot be liable to plaintiffs under 42

---

3. In *Griffin,* the Supreme Court held that the language of Section 1985(3) requiring an intent to deprive the victim of "equal protection of the laws" or "equal privileges and immunities under the laws" is limited to cases where there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102, 91 S.Ct. at 1798. The "class-based

animus" requirement was limited to the first clause of Section 1985(3) in *Kush,* in which the Court held that *Griffin* did not apply to conspiracies to intimidate witnesses in federal courts under the first clause of Section 1985(2). *Kush,* 460 U.S. at 726, 103 S.Ct. at 1488.

*Harrison,* 780 F.2d at 1429.

U.S.C. § 1983, because as a judicial officer he is absolutely immune from suit. Absolute judicial immunity protects a judicial officer from civil suits seeking money damages, including those suits initiated under 42 U.S.C. § 1983.[4] *Callahan v. Rendlen,* 806 F.2d 795, 796 (8th Cir.1986). A judge is protected by absolute judicial immunity only if 1) he or she had subject matter jurisdiction over the case from which the alleged constitutional violations stem, and 2) the acts as to which complaint is made were judicial acts. *Stump v. Sparkman,* 435 U.S. 349, 356, 360, 98 S.Ct. 1099, 1104, 1106, 55 L.Ed.2d 331 (1978); *Liles v. Reagan,* 804 F.2d 493, 495 (8th Cir.1986). Whether an act performed by a judge is "judicial" is determined by: 1) the nature of the act itself—whether it is a function normally performed by a judge, and 2) the expectation of the parties—whether they dealt with the judge in his or her judicial capacity. *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107; *Liles,* 804 F.2d at 495; *Birch v. Mazander,* 678 F.2d 754, 756 (8th Cir.1982).

■ The Court finds that Judge Williams is absolutely immune from suit under Section 1983 for any alleged constitutional violations arising from his dispositional orders regarding Weseman's custody. As a juvenile court judge, Judge Williams had subject matter jurisdiction over Weseman's case and thence over her disposition after a finding of delinquency. Pursuant to statute, the juvenile court "has original and exclusive jurisdiction in proceedings concerning any child who is alleged to be delinquent," Minnesota Statutes, Section 260.-111, subd. 1, and may transfer legal custody of the child from his or her parents to the county welfare board, the commissioner of corrections, or any child placing agency. Minn.Stat. 260.185, subd. 1(c) and (d).

■ Judge Williams' failure to make the requisite findings in his dispositional orders regarding Weseman or the fact that his disposition of her may not have been necessary or in her best interest does not deprive him of subject matter jurisdiction. Although his actions may have been in excess of jurisdiction, they were not taken in the clear absence of jurisdiction. *See Stump,* 435 U.S. at 355–57, 98 S.Ct. at 1104–05 (distinguishing "excess" of jurisdiction from "absence" of jurisdiction). Judge Williams had the power to hear the issues and make the decisions he did in the state juvenile court proceeding. Decisions which are arguably (and even subsequently found to be) incorrect do not deprive the judge making them of his or her jurisdiction. *Liles,* 804 F.2d at 495. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump,* 435 U.S. at 356–57, 98 S.Ct. at 1104–05 (citation omitted). The Court holds that Judge Williams' actions regarding Weseman were not taken in the clear absence of all jurisdiction.

In addition to having subject matter jurisdiction over Weseman's case, Judge Williams performed judicial acts when issuing dispositional orders regarding Weseman's custody.[5] Dispositional determinations are normal functions for juvenile court judges upon a finding of delinquency.

---

4. In this action, plaintiffs seek only monetary damages. Questions of injunctive relief are not before the Court.

5. Plaintiffs here attempt a disingenuous argument: they claim Judge Williams wrongfully substituted probation officer Johnson, who was compliant to Williams' wishes regarding Weseman's custody, for probation officer Thompson, who presumably would not have recommended placing Weseman at St. Croix Camp. They claim Judge Williams' actions regarding the assignment of probation officers was an administrative, not a judicial act. They then note that as an administrator, Judge Williams is not absolutely immune from suit. *See Atcherson v. Sei-*

*benmann,* 605 F.2d 1058 (8th Cir.1979); *Clark v. Campbell,* 514 F.Supp. 1300 (W.D.Ark.1981).

The flaw in plaintiffs' argument is obvious. It is clear to the Court, and the Court finds, that any purported violation of plaintiffs' constitutional rights occurred as a result of Judge Williams' dispositional orders regarding Weseman and not as a result of his interactions with Meeker County's probation officers. With respect to Ms. Weseman's disposition, Judge Williams was acting in a judicial capacity, not an administrative capacity. Whether Judge Williams did or did not act as an administrator vis-a-vis his probation officers is irrelevant to this case and cannot be used to defeat his absolute immunity.

*See* Minn.R.Juv.Ct.P. 30.01, *et seq.* From the evidence presented to the Court, it is clear that during the hearings regarding Weseman's custody and upon the issuance of the dispositional orders, the parties dealt with Judge Williams in his judicial capacity.

Since Judge Williams had subject matter jurisdiction over Weseman's case and was performing judicial acts when issuing his dispositional orders regarding Weseman's custody, the Court finds that he is absolutely immune from suit for any alleged constitutional violations arising out of those determinations.

### 2. Bruce P. Johnson

Probation officer Bruce P. Johnson also contends he is absolutely immune from suit for any violations of plaintiffs' civil rights arising out of the dispositional orders regarding Weseman's custody. Courts have extended absolute judicial immunity from damage actions under 42 U.S.C. § 1983, not only to judges, but also to nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process. *Moses v. Parwatikar,* 813 F.2d 891, 892 (8th Cir.1987); *Myers v. Morris,* 810 F.2d 1437, 1466–67 (8th Cir.1987); *Demoran v. Witt,* 781 F.2d 155, 156 (9th Cir.1986).

█ In determining whether a nonjudicial person falls within the scope of absolute judicial immunity, the courts have adopted a "functional approach." *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 810, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982); *Ray v. Pickett,* 734 F.2d 370, 372 (8th Cir.1984); *Demoran,* 781 F.2d at 156. Thus, the scope of immunity accorded a nonjudicial person is not dependent upon his or her location within the government, but rather upon the special nature of that person's responsibilities. *Cleavinger,* 106 S.Ct. at 501; *Ray,* 734 F.2d at 372; *see also Butz v. Economou,* 438 U.S. 478, 511, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). Under this approach, certain adjudicatory or prosecutorial functions of a probation officer may be entitled to absolute immunity, while other functions, more administrative, supervisory, or investigative in nature, may warrant only a qualified immunity. *Ray,* 734 F.2d at 372.

█ In this case, the Court finds that the actions taken by Johnson relating to the custody dispositions of Weseman were clearly adjudicatory in nature, thus making him absolutely immune from suit. In October, 1984, Johnson, pursuant to Court order, conducted an investigation of Weseman's probationary status and reported his findings to the Court at a formal hearing. This was the hearing in which foster care placement was terminated and Weseman was ordered to spend seven of every fourteen days with her mother. Plaintiffs contend that the information Johnson disclosed to the Court was false and misleading. At the close of his report, Johnson recommended to the Court that Weseman remain in foster care. Johnson was closely examined by Weseman's attorney at this hearing regarding this recommendation. Judge Williams rejected this recommendation.

In April, 1985, again pursuant to Court order, Johnson conducted another investigation of Weseman's probationary status and reported his findings to the Court at a formal hearing. Plaintiffs contend that this information was also false and misleading. At this hearing Johnson recommended Weseman be placed at the St. Croix Camp. Judge Williams followed this recommendation and placed Weseman at the camp.

█ Johnson's investigations and reports concerning Weseman are directly analogous to a probation officer's investigations and reports concerning a criminal defendant prior to sentencing. Numerous courts have held probation officers to be absolutely immune from suit regarding their activities in preparing and submitting presentence investigation (PSI) reports. *See Demoran v. Witt,* 781 F.2d 155 (9th Cir.1986); *Spaulding v. Nielsen,* 599 F.2d 728 (5th Cir.1979); *Crosby-Bey v. Jansson,* 586 F.Supp. 96 (D.D.C.1984); *see also Meyers,* 810 F.2d at 1467. When preparing and submitting the PSI report, a probation officer "serves as the court's eyes and ears and must exercise discretion in conducting his investigation and making his recommendations, without fear of subsequent

civil liability." *Crosby-Bey,* 586 F.Supp. at 99. Absolute immunity is afforded to a probation officer even when it is alleged the officer acted with malice or in bad faith in investigating or preparing the report. *Demoran,* 781 F.2d at 158.[6]

The Court is persuaded and holds that Johnson's actions in investigating and reporting on Weseman are the actual and functional equivalent of a probation officer's duties in preparing and submitting a PSI report. Johnson, in his duties, was performing an adjudicative function in aid of the Court in its judicial function. The Court then finds that Johnson is immune from suit.[7]

### 3. Meeker County and Meeker County Department of Court Services

Plaintiffs contend the County is liable for any violations of plaintiffs' constitutional rights by Judge Williams. Further, they claim both the County and Court Services are responsible for any constitutional violations committed by probation officer Johnson. In response, the County and Court Services contend that even assuming Judge Williams and probation officer Johnson violated plaintiffs' constitutional rights, they cannot be liable to plaintiffs under 42 U.S.C. § 1983.

■ It is well established law that municipalities and other local government units may be sued under 42 U.S.C. § 1983 for the constitutional torts of their employees. *Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 663, 690, 98 S.Ct. 2018, 2021, 2035, 56 L.Ed.2d 611 (1978). Liability, however, may not be premised on a *respondeat superior* theory. *Id.* at 663, 691, 98 S.Ct. at 2021, 2036. Rather, liability may only be imposed if the unconstitutional actions of the employees are executed pursuant to a policy of the municipality. *Id.* at 690–94, 98 S.Ct. at 2035–37; *Griffin v. Hilke,* 804 F.2d 1052, 1058 n. 3 (8th Cir.1986), *petition for cert. filed,* 55 U.S.L.W. 3749 (U.S. Mar. 20, 1987) (No. 86–1526). This policy need not be formally adopted by the municipality's decision-making channels but instead may result from custom or usage. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Whatever the municipality's basis for the policy, that policy must be the moving force behind the constitutional violation for liability to be established. *Id.* at 694, 98 S.Ct. 2037; *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981); *Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir. 1987).[8]

■ Plaintiffs allege the County and Court Services had a policy or custom of inadequately and improperly training, assigning, supervising, and controlling their judges and probation officers, resulting in the violation of plaintiffs' civil rights. It must be noted that the United States Supreme Court's recent footnoted suggestions in *City of Oklahoma City v. Tuttle,* 105 S.Ct. at 2436 n. 7[9] and at 2441 n. 8[10]

---

**6.** While the Eighth Circuit has never directly ruled on whether a probation officer should be granted absolute immunity for actions taken in preparing a PSI report, it appears that the Court would favor such a ruling. *See Meyers v. Morris,* 810 F.2d 1437 (8th Cir.1987); *Ray v. Picket,* 734 F.2d 370 (8th Cir.1984); *McCurry v. Tesch,* 738 F.2d 271 (8th Cir.1984) (Fagg, J., dissenting), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985).

**7.** Plaintiffs urge that even if the Court concludes that Judge Williams and probation officer Johnson are absolutely immune from suit, they may still be liable to plaintiffs on their conspiracy claims. Plaintiffs contend that "any actions taken in furtherance of conspiracies to deprive individuals of civil rights are not protected by immunity." (See Plaintiffs' Memorandum Opposing the Motions of Defendants Meeker County, et al., at p. 23.) Plaintiff's argument does not comport with the law. In *Moses,* 813 F.2d at

892, the Eighth Circuit held that absolute immunity is not affected by a conspiracy. Plaintiffs' argument therefore fails.

**8.** The Supreme Court has recently affirmed the *Monell* principles outlined above in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) and *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

**9.** *Tuttle,* 105 S.Ct. at 2436 n. 7, states,
We express no opinion on whether a policy that itself is not unconstitutional, such as the general "inadequate training" alleged here, can ever meet the "policy" requirement of *Monell.* In addition, even assuming that such a "policy" would suffice, it is open to question whether a policymaker's "gross negligence" in establishing ... training practices could establish a "policy" that constitutes a "moving force" behind subsequent unconstitutional

(1985), do not at all rule out the possibility that a failure to adequately train or supervise may constitute a "custom" or "policy" within the meaning of *Monell.* Courts in this circuit have recognized that municipalities or local government units may be liable under 42 U.S.C. § 1983 for their failure to adequately train or supervise their employees. *Patzner v. Burkett,* 779 F.2d 1363, 1366–67 (8th Cir.1985); *Herrera v. Valentine,* 653 F.2d 1220, 1224 (8th Cir.1981); *Pinkney v. Clay County,* 635 F.Supp. 1079, 1082 (D.Minn.1986). To be liable, however, the municipality or local governmental unit must have had notice of prior misbehavior by their employees and have failed to take remedial steps amounting to deliberate indifference to the offensive acts. *Patzner,* 779 F.2d at 1367; *Herrera,* 653 F.2d at 1224; *Pinkney,* 635 F.Supp. at 1082.

■ In this case, plaintiffs have neither alleged nor presented any evidence indicating the existence of prior misbehavior by Judge Williams or probation officer Johnson. Having proferred no such evidence, they have made no effort at all to even suggest that either the County or Court Services had any notice of prior misbehavior. Absent either prior acts of misbehavior, or any suggestion of notice of the same, plaintiffs do not have a viable claim against either the County or Court Services pursuant to 42 U.S.C. § 1983.

### C. Plaintiffs' Claims Under 42 U.S.C. § 1988

Plaintiffs seek attorneys' fees pursuant to 42 U.S.C. § 1988. Section 1988 provides that in any action to enforce 42 U.S.C. §§ 1981, 1983, 1985, or 1986, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." To recover attorneys' fees under Section 1988, plaintiffs must be the "prevailing parties." *Hensley v. Eckerhart,* 461 U.S.

424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). " '[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Id.,* quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978).

In this case, plaintiffs have prevailed on none of their claims. They have failed to assert viable claims under 42 U.S.C. §§ 1981, 1985, or 1986. They have alleged no facts nor presented any evidence pointing to the County's or Court Service's liability under 42 U.S.C. § 1983. Their claims against Judge Williams and probation officer Johnson pursuant to Section 1983 are barred by absolute judicial immunity.

■ Plaintiffs contend, citing *Pulliam v. Allen,* 466 U.S. 522, 544, 104 S.Ct. 1970, 1982, 80 L.Ed.2d 565 (1984), that judicial immunity is not a bar to the award of attorneys' fees under 42 U.S.C. § 1988. Although this is true, it is clear from *Pulliam* that to recover attorneys' fees from either Judge Williams or probation officer Johnson, plaintiffs must prevail against them on a claim for injunctive relief. Plaintiffs have not done so. Plaintiffs are not entitled to attorneys' fees under Section 1988.

### D. Plaintiffs' Pendent Claims Under State Law

■ The Court has granted defendants' motions for summary judgment on plaintiffs' federal claims. Remaining before the Court are plaintiffs' pendent state claims. The general rule is that pendent claims should be dismissed without prejudice if federal claims are dismissed before trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Clayton v. Blachowske Truck Lines, Inc.,* 640 F.Supp. 172, 174

conduct, or whether a more conscious decision on the part of the policymaker would be required.

**10.** *Tuttle,* 105 S.Ct. at 2441 n. 8, states,

I do not understand, nor do I see the necessity for, the metaphysical distinction between policies that are themselves unconstitutional and

those that cause constitutional violations. See *ante,* at 2436, and n. 7. If a municipality takes actions—whether they be of the type alleged in *Monell, Owen* [*v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673], or this case—that cause the deprivation of a citizen's constitutional rights, Section 1983 is available as a remedy.

(D.Minn.1986), *aff'd,* 815 F.2d 1203 (8th Cir. 1987). To proceed with state claims lacking an independent basis of federal jurisdiction after all federal claims have been dismissed is discretionary with the trial court, however. *Koke v. Stifel, Nicolaus & Co., Inc.,* 620 F.2d 1340, 1346 (8th Cir.1986); *see also Less v. Lurie,* 789 F.2d 624, 626 (8th Cir.1986). Factors to consider in the exercise of the Court's discretion include the difficulty of the state claims, the amount of judicial time and energy already invested in them, the amount of additional time and energy necessary for their resolution, and the availability of a state forum. *Koke,* 620 F.2d at 1346; *Clayton,* 640 F.Supp. at 174. Having weighed these factors, the Court is convinced that plaintiffs' state claims should be dismissed without prejudice.

For the reasons set forth at the hearing, and for the reasons outlined above, IT IS ORDERED that:

1. Plaintiffs' motion to dismiss the amended complaint with prejudice against the State of Minnesota is granted.

2. Defendants' motions for summary judgment on plaintiffs' federal claims are granted.

3. Plaintiffs' remaining state law claims are dismissed without prejudice.

4. Defendants' motions for sanctions in the form of attorneys' fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure are denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.