627 F.Supp. 137 (1985)
Joseph HENNESSEY and Helen Hennessey, individually and as parents and next friends of Elizabeth Hennessey, a minor, Plaintiffs,
v.
STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Carol Winterburn, individually and as Counselor for the Department of Social and Health Services, State of Washington; and Mike Padelford, Administrator, Pasco Community Services Office, Department of Social and Health Services, Defendants.
No. C-84-525 RJM.
United States District Court, E.D. Washington.
August 27, 1985.
(Richard H. Bennett), R. Henry Bennett, Inc., Everett, Wash., for plaintiffs.
Don G. Daniel, Asst. Atty. Gen., State of Wash., Olympia, Wash., for State of Wash., Dept. of S.H.S. and Carol Winterburn.

MEMORANDUM AND ORDER
ROBERT J. McNICHOLS, Chief Judge.
This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1985(3) and *138 1988 against the State of Washington, Department of Social and Health Services and two of its employees.[1] The operative facts are as follows. On or about October 4, 1983 plaintiffs' four year old daughter, Elizabeth, was taken to Dr. Nancy Johnson for treatment of a shattered front tooth. Two days later on October 6th, Elizabeth returned with a similar injury. On both occasions, a bicycle accident was given as the cause of injury.
Dr. Johnson suspected child abuse. She immediately notified Child Protective Services.[2] Defendant Carol Winterburn, a DSHS caseworker, responded to the call. Ms. Winterburn felt that the evidence indicated possible child abuse and she contacted the Kennewick Police Department. On October 7, 1983, Elizabeth was taken into protective custody by the police department and temporary foster care was arranged for her by Ms. Winterburn.
Further investigation was conducted that same day by Officer Larson of the Kennewick Police Department who was accompanied by Ms. Winterburn. From all indications it appeared to both Officer Lawson and Ms. Winterburn that Elizabeth had in fact sustained her injuries in a fall from her bicycle. Officer Lawson and Ms. Winterburn reported their findings to the Benton County Prosecutor, Les Ching, together with a recommendation that protective custody be removed. Prosecutor Ching concurred with their recommendation and he removed Elizabeth from protective custody at approximately 5:00 p.m. on October 7.
At some point in her discussions with Prosecutor Ching, Ms. Winterburn expressed concern that Elizabeth's recurring accidents might be due to developmental problems. Ms. Winterburn suggested to the plaintiffs that further evaluation of Elizabeth might be in order to determine the cause of Elizabeth's accidents. This suggestion understandably was met with some degree of opposition from plaintiffs. Ms. Winterburn renewed her concerns with Prosecutor Ching who agreed that further evaluation of Elizabeth was warranted. On October 9, 1983 Ms. Winterburn filed a request for a dependency petition to obtain a court ordered evaluation of Elizabeth. Apparently, Elizabeth remained in her parents' custody pending the outcome of the proceedings. The proceedings were eventually terminated in favor of the plaintiffs on January 12, 1984 on the motion of the prosecuting attorney based upon a lack of supporting evidence. This action followed.
All defendants have moved for summary judgment pursuant to Rule 56 Fed.R.Civ.P. The motions are based on several grounds and I will address each one in turn.

Jurisdiction
A threshold issue presented by the defendants is that the court lacks subject matter jurisdiction over this action. Defendants' argument is based upon the long-standing "domestic relations" exception to federal court jurisdiction. This exception has its roots in early judicial construction of the diversity statute. Csibi v. Fustos, 670 F.2d 134 (9th Cir.1982). A fair reading of Csibi would seem to limit its application to such cases.[3]But see Firestone v. Cleveland *139 Trust Co., 654 F.2d 1212 (6th Cir. 1981) (holding that federal question suits which are in substance domestic relations actions will not be entertained in federal court.)
Apart from the confusion over whether the domestic relations exception is only applicable to diversity actions, I believe that under the facts of this case the exception does not apply. As a jurisdictional limitation the exception has been narrowly construed. Csibi at 137. Only those cases most closely resembling ecclesiastical actions have been considered absolutely outside federal court jurisdiction. Id. Cases including those where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child are considered to be "at the core" of the exception. Id. As such, federal courts must decline jurisdiction in those cases concerning domestic relations only when "the primary issue concerns the status of parent and child or husband and wife." Buechold v. Ortiz, 401 F.2d 371 (9th Cir.1968).
In this action, plaintiffs seek redress for alleged violations of their constitutional rights. Plaintiffs do not challenge the competency of the state court in settling a domestic dispute. Nor is this an area which is particularly suited to state regulation and control. Cf., Csibi at 137. In this case, the subject of domestic relations is peripheral to the issues presented. Federal courts are not ousted of their jurisdiction merely because the suit arises in a domestic relations context. Elam v. Montgomery County, 573 F.Supp. 797 (S.D.Ohio 1983). Accordingly, I hold that this court does have jurisdiction over this action and I will now turn to the defendants' other contentions.

Plaintiffs' § 1985 Claims
Defendants have not tailored their present motion for summary judgment to address plaintiffs' claim under 42 U.S.C. § 1985(3). Presumably this claim is to be disposed of by the other grounds upon which defendants rely. Nevertheless, this claim may be dealt with quite summarily at the outset. Section 1985(3) is directed towards conspiracies which are motivated by racial or other class-based discriminatory animus. Mollnow v. Carlton, 716 F.2d 627 (9th Cir.1983), cert denied, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984). The plaintiffs have neither alleged nor offered any evidence to indicate that the defendants were so motivated. Accordingly, plaintiffs' § 1985(3) claims are dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

DSHS
Defendant DSHS, relying on Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) argues that suits against the State of Washington under 42 U.S.C. § 1981 et. seq are barred by the eleventh amendment. Defendant DSHS further contends that this immunity is extended to departments of state government citing Sykes v. State of California (Dept. of Motor Vehicles), 497 F.2d 197 (9th Cir. 1974). Defendant's argument has merit.
Further research indicates that the only erosion of the eleventh amendment immunity doctrine relied upon by defendant, is that local government units are not considered part of the state for Eleventh Amendment purposes. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs do not allege that DSHS is a "local" government entity. Thus, their reliance on Monell is misplaced. Although a state may waive its Eleventh Amendment immunity, clearly the State of Washington has not done so. McConnell v. Critchlow, 661 F.2d 116 (9th Cir.1981). Accordingly, plaintiffs' claims against DSHS must fail.

Carol Winterburn
Plaintiffs' allegations as to Carol Winterburn appear to be that after investigating the circumstances surrounding their daughter's injury and determining that there was no basis for suspecting child abuse, Ms. Winterburn divulged false and misleading information to the Benton County *140 Deputy Prosecutor, Les Ching. This in turn caused the prosecutor to initiate dependency proceedings which were ultimately dismissed in plaintiffs' favor. It is complained that this conduct deprived plaintiffs of their constitutional rights. I have serious doubts as to whether the above conduct standing alone would constitute a violation of plaintiffs' constitutional rights. Cf. Duchesne v. Sugarman, 566 F.2d 817 (2nd Cir.1977). However, this is an issue I need not now decide. The state bases its motion for summary judgment on immunity and thus, for purposes of this motion I will assume that plaintiffs have stated an otherwise cognizable claim under section 1983.
All of the allegations against Carol Winterburn arise from her activities in preparing and presenting this case to County Prosecutor Ching. As such, the state argues that Ms. Winterburn is absolutely immune from civil rights liability under the absolute immunity doctrine enunciated in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In Imbler, the question presented to the Court was whether a prosecutor who was acting within the scope of his duties in initiating and pursuing a criminal prosecution was amenable to suit under 42 U.S.C. § 1983. The Court held that he was not. The Court reasoned that imposing § 1983 liability on a prosecutor would have a debilitating effect on the criminal justice system. Of chief concern to the Court was the fact that imposing such liability on prosecutors would undermine the vigorous and fearless performance of his duties and dissipate his energies toward the defense of civil suits. Id. at 424-25, 96 S.Ct. at 992.
The reasoning of Imbler has been extended to child protective service caseworkers. The leading case in this area is Whelehan v. County of Monroe, 558 F.Supp. 1093 (W.D.N.Y.1983). Following the "functional comparability" test set forth by the Supreme Court in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the court held that the roles of social services employees in reporting incidents of suspected child abuse were sufficiently analogous to the role of a prosecutor to warrant the extension of absolute immunity to them. The court's rationale is instructive:
If social service workers were required to guard against possible section 1983 claims arising from such decisions their evaluation of the information at hand could be easily colored and, it may be expected, sometimes at the expense of the life or well-being of abused or neglected children. Such a result cannot be countenanced for the administration of remedial child-protective laws anymore than for prosecutors' enforcement of the criminal laws.
Id. at 1099.
The reasoning of Whelehan is grounded in sound public policy and I expressly adopt it here. In so doing I am mindful that this is an area where the emotional stakes are high. The outrage and frustration that arises when the state intervenes in matters of family intimacy is obvious. Nevertheless, underlying the doctrine of absolute immunity is a recognition that the interests of particular individuals must sometimes be subordinated to the interests of society as a whole. Demery v. Kupperman, 735 F.2d 1139 (9th Cir.1984), cert denied, ___ U.S. ___, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). It is the responsibility of the Department of Social and Health Services to protect the health and welfare of the children of this state. They must be free to do so unhampered by the threat of civil suits of this nature. Accordingly, plaintiffs' claims against Carol Winterburn are dismissed.

Mike Padelford
Defendants argue that plaintiffs' claims against Mike Padelford are nothing more than an attempt to impose liability upon him under a theory of respondeat superior. Defendants rely on Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) and its progeny for the *141 proposition that such claims do not establish a cause of action under § 1983. It is beyond dispute that a superior cannot be held liable under § 1983 for the constitutional deprivation caused by his subordinates, absent a showing that he participated or directed the deprivation. Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675 (9th Cir.1984).
Plaintiffs advance various theories of liability in support of their claims against Mike Padelford. Again assuming that plaintiffs have in fact suffered a deprivation of their constitutional rights, the only theory that is somewhat supported by the record is that Mike Padelford was aware of his subordinate's activities and failed to take appropriate action to prevent their occurrence. Such acquiesence has been held to state a claim under § 1983. McClelland v. Facteau, 610 F.2d 693 (10th Cir.1979). This circuit has tacitly approved such a claim. Ybarra at 680.
This theory is nonetheless unavailing to the plaintiffs because Padelford is covered by the same absolute prosecutorial immunity as is his subordinate. His failure to take affirmative steps to prevent Ms. Winterburn's conduct is precisely the type of conduct to which immunity should attach. The protective services worker assigned to a particular case is infinitely more familiar with the facts involved and second guessing by a superior who is understandably fearful of civil liability would undermine the entire system. It would present anomalous results if Ms. Winterburn were allowed to act with impunity in preparing her case only to have her superior prevent the institution of any formal proceedings. Therefore, plaintiffs' claims against defendant Padelford must also be dismissed.
This Order addresses only the Federal claims asserted. What, if any, claims may be available through state procedures is not a matter for comment by this court. This action is dismissed. The Clerk shall enter judgment accordingly.
IT IS SO ORDERED.
NOTES
[1] Several pendent state law claims are also asserted including claims for slander, intentional infliction of emotional distress and malicious prosecution. For reasons that follow, I believe that summary judgment must be entered in favor of all defendants on plaintiffs' federal causes of action. Therefore, plaintiffs' pendent state law claims will also be dismissed. Jason v. Fonda, 698 F.2d 966 (9th Cir.1982).
[2] CPS is a departmental unit of the Department of Social and Health Services (DSHS) and will be referred to hereafter as DSHS.
[3] In Csibi the court noted that the Supreme Court has assumed jurisdiction over domestic relations cases on at least two occasions involving statutes granting broader jurisdictional power. Citing De La Rama v. De La Rama, 201 U.S. 303, 26 S.Ct. 485, 50 L.Ed. 765 (1906) and Simms v. Simms, 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899). The court concluded that domestic relations cases are within Article III judicial power of the federal courts, but outside the power bestowed by Congress in the diversity statute. Id at 136 n. 4. For a thorough analysis of this perplexing problem see Spindel v. Spindel, 283 F.Supp. 797 (E.D.N.Y.1968).