Michael PINKNEY, individually and as parent and natural guardian of Jessica Pinkney, a minor; Martin J. Pinkney and Maralee A. Pinkney, Plaintiffs,

v.

CLAY COUNTY (State of Minnesota), Dr. Gerald A. Kiedrowski, Larry K. Mickelberg, Paul Gerber, Bureau of Criminal Apprehension of the State of Minnesota, hereinafter referred to as BCA, Michael McCarthy, Jerome Thorson, Michael Johnson, Rape and Abuse Crisis Center of Fargo, North Dakota, and Becky Montgomery, Defendants.

Civ. No. 6–85–1884.

United States District Court,
D. Minnesota,
Sixth Division.

April 11, 1986.

Jerome D. Ciresi, St. Paul, Minn., for plaintiffs.

Robert G. Haugen, Johnson & Lindberg, Minneapolis, Minn., for defendants Clay County, Mickelberg, and Johnson.

Catherine F. Haukedahl, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants Gerber and BCA, but did not participate in the proceedings.

Douglas J. Juirhead, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendants Rape and Abuse Crisis Center of Fargo, N.D., and Montgomery, but did not participate in the proceedings.

Timothy M. McLarnan, Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, Minn., for defendant Thorson, but did not participate in the proceedings.

Jane C. Heinley, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, N.D., for defendant Kiedrowski, but did not participate in the proceedings.

DIANA E. MURPHY, District Judge.

Plaintiffs Michael Pinkney, individually and for his daughter, Jessica, and Martin J. and Maralee A. Pinkney, Michael's parents, brought this action for compensatory and punitive damages. The defendants are Clay County, Minnesota, Dr. Gerald A. Kiedrowski, Michael Johnson, Michael McCarthy, the Rape and Abuse Crisis Center of Fargo, North Dakota (RACCF), Paul Gerber, the Minnesota Bureau of Criminal Apprehension (BCA), Jerome Thorson, Becky Montgomery, and Larry K. Mickelberg. Plaintiffs allege that defendants conspired to investigate and falsely prosecute Michael Pinkney for sexually abusing his daughter and to remove Jessica from his custody. They allege federal question jurisdiction pursuant to 28 U.S.C. § 1331.[1] The matter is now before the court on motions of defendants Clay County, Mickelberg, and Johnson to dismiss.

## I. Background

This civil rights action arises from an investigation of Michael Pinkney's alleged sexual abuse of his then 2½ year old daughter, Jessica Pinkney. Many of the facts are in dispute. For the purposes of this motion to dismiss, however, the court takes plaintiffs' factual allegations as true.

Investigation into Michael's alleged sexual abuse began in July 1983. Defendants state that Kim Botez, Jessica's mother and Michael's former wife, contacted Becky Montgomery, a RACC counselor, on July 19, 1983 regarding the alleged sexual abuse. Montgomery then relayed these

---

1. Plaintiffs also erroneously allege diversity jurisdiction. Defendants Clay County, Mickelberg, and Johnson are, like plaintiffs, citizens of Minnesota; complete diversity is therefore lacking.

suspicions to Johnson, a Clay County social worker.

Defendant Johnson apparently initiated an investigation which was conducted by Gerber, a BCA investigator, McCarthy and Thorson, both Moorhead Police Officers, and Johnson allegedly questioned Jessica with "anatomically correct" dolls. Plaintiffs assert that the questioning did not follow proper guidelines, as recommended by the manufacturer and experts in the field, and that Gerber, McCarthy, and Johnson did not have the proper training or experience in this area. Plaintiffs also allege that Gerber questioned Michael with a concealed tape recorder, without Michael's knowledge, or consent, and that the investigation as a whole was biased and inadequate.

Plaintiffs allege that RACC, Montgomery, Johnson, and McCarthy requested that Dr. Kiedrowski examine Jessica. After examining Jessica, Kiedrowski apparently stated that there was evidence that Michael had abused her, and recommended that Michael not be allowed further contact with his daughter. Plaintiffs assert that Kiedrowski failed to use the appropriate procedures for examining an alleged sexual abuse victim and that the examination was inadequate and incomplete. Plaintiffs further argue that the examination and photographs taken of Jessica were an invasion of her body and privacy.

Apparently as a result of the investigation and Kiedrowski's recommendation, the Clay County District Court removed Jessica from her father's temporary custody and awarded Kim Botez physical custody, at least until the investigation was completed.[2] *Pinkney v. Pinkney*, slip op. at 2 (Clay Cty.Dist.Ct., Dec. 17, 1984). Plaintiffs allege that Jessica was removed from Michael's custody despite the defendants' knowledge of certain exculpatory evidence.

Clay County Attorney Mickelberg filed criminal charges against Michael and the grand jury indicted him. Plaintiffs allege that Mickelberg withheld exculpatory evidence from the grand jury, misled the grand jury, and withheld testimony regarding the "cognitive and memory capacities of a 2½ year old child and its effect on her ability to accurately verbalize and demonstrate alleged sexual abuse." According to defendants, after the indictment, Mickelberg turned the case over to the Minnesota Attorney General. The Attorney General's Office later recommended that the charges be dismissed for lack of evidence. The indictment was dismissed without prejudice.

On December 17, 1984, several months after it removed Jessica from Michael's custody, the Clay County District Court entered a judgment reinstating joint legal and physical custody of Jessica. The court found: "there exists no medical evidence or behavior evidence of sexual child abuse of Jessica Pinkney by Michael Pinkney, and it is therefore found that Michael Pinkney did not sexually abuse Jessica Pinkney." *Pinkney v. Pinkney*, slip op. at 2 (Clay Cty.Dist.Ct., Dec. 17, 1984).

## II. Discussion

Clay County, Mickelberg, and Johnson all move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). A motion to dismiss requires the court to consider the facts in the light most favorable to the plaintiff. *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784 (8th Cir.1979) (quoting *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir.1978)), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). The court must not dismiss a complaint merely because it doubts that a plaintiff will prevail, but must deny the motion to dismiss unless it appears that plaintiff "can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. Clay County

Plaintiffs argue that Clay County is liable under 42 U.S.C. § 1983 because its em-

**2.** It appears from the record that before the events that gave rise to this suit, Michael Pinkney and Kim Botez had joint custody of Jessica and that they alternated physical custody.

ployees engaged in various improper and unlawful acts and because it failed to provide adequate supervision and training for its employees. Specifically, plaintiffs allege that Gerber, Johnson, and Thorson were not properly trained in questioning Jessica with "anatomically correct" dolls, that Clay County employees participated in the removal of Jessica, that Johnson assisted Clay County attorney Mickelberg in seeking out a candidate for prosecution for sexual abuse without probable cause, that Clay County employees conspired, in an unspecified manner, to violate various Minnesota statutes which set out the procedures for reporting and investigating allegations of child abuse and determining child custody, and that Clay County officials failed to make an adequate or full investigation. Clay County moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(5), arguing that plaintiffs have failed to state a cause of action because they fail to allege that individual defendants violated plaintiffs' civil rights pursuant to a county custom or policy.

■ Although a county government is a "person" subject to liability for civil rights violations committed by its employees, liability cannot be premised merely on the fact of employment. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[P]roof of a single instance of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional [governmental] policy, which policy can be attributed to a [governmental] policymaker." *City of Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 2435, 85 L.Ed.2d 791 (1985) (plurality). *See also Pembaur v. City of Cincinnati*, —— U.S. ——, ——, 106 S.Ct. 1292, 1296, 89 L.Ed.2d 452 (1986). A county may be held liable for failure to train or supervise its employees if "it had notice of prior misbehavior by its [employees] and failed to take remedial steps amounting to a deliberate indifference to the offensive acts." *Patzner v. Burkett*, 779 F.2d 1363, 1367

(8th Cir.1985) (citing *Herrera v. Valentine*, 653 F.2d 1220 (8th Cir.1981)).

■ Plaintiffs have failed to allege the existence, much less notice, of prior misbehavior, and their allegations do not suggest the existence of an unconstitutional government policy or one attributable to a policymaker. Plaintiffs have not alleged a viable § 1983 claim against Clay County.

### B. Prosecutor Larry K. Mickelberg

Plaintiffs allege that Clay County Prosecutor Mickelberg "breached his duty as a prosecutor," that he withheld exculpatory evidence from the grand jury and falsely suggested to it that he had inculpatory evidence, and that Mickelberg conspired, in an unspecified manner, to violate numerous Minnesota statutes and regulations. Mickelberg's motion to dismiss is based on his claim of absolute immunity.

■ Prosecutors enjoy absolute immunity from § 1983 suits for damages when they act within the scope of their prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 420, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Absolute immunity "defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Id.* at 419 n. 13, 96 S.Ct. at 989 n. 13. Absolute immunity does not, however, automatically apply to all the prosecutor's actions, but only to those actions which are prosecutorial, rather than administrative or investigative in nature. *Smith v. Updegraff*, 744 F.2d 1354, 1364 (8th Cir.1984); *In re Scott County Master Docket*, 618 F.Supp. 1534, 1552 (D.Minn.1985).

■ Plaintiffs have failed to suggest that Mickelberg's actions were other than prosecutorial in nature. Their allegations constitute at most a charge of malicious prosecution. It is well-settled that, "[t]he general rule was and is, that a prosecutor is absolutely immune from suit for malicious prosecution." *Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986) (quoting *Imbler*, 424 U.S. at 437, 96 S.Ct. at 998). Mickelberg is entitled to a

dismissal based on absolute prosecutorial immunity.

## C. Social Worker Michael Johnson

Plaintiffs allege that Johnson violated their statutory and constitutional rights by improperly questioning Jessica with "anatomically correct" dolls by failing to conduct a full investigation; by conspiring to violate numerous Minnesota statutes and regulations; and by participating in the forcible removal of Jessica. Defendant Johnson asserts that none of these allegations should defeat his absolute or qualified immunity.

■ Unlike prosecutors, social workers do not enjoy absolute immunity. *Scott County*, 618 F.Supp. at 1565; *Doe v. Hennepin County*, Civil No. 4-84-115, slip op. at 15 (D.Minn. June 26, 1984). Judges, jurors, witnesses, and prosecutors enjoy absolute immunity because they perform functions which "[are] integral parts of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1982). The Supreme Court has "interpreted § 1983 to give absolute immunity to functions 'intimately associated with the *judicial* phase of the criminal process.'" *Malley v. Briggs*, 106 S.Ct. at 1092 (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995). A social worker's duties are not part of the judicial process as such.[3]

■ Defendant Johnson contends alternatively that he deserves dismissal on qualified immunity grounds. Under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. at 2727, 2738, 73 L.Ed.2d 396 (1982),

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The burden is on the defendant to show that he did not violate such clearly established rights. *Green v. White*, 693 F.2d 45 (8th Cir.1982), *cert. denied*, 462 U.S. 1111, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983).

■ *Harlow* requires a two step analysis. The first issue, which is properly considered on a motion to dismiss, asks whether plaintiffs have alleged facts which, if true, would indicate violations of clearly established rights. 457 U.S. at 818-19, 102 S.Ct. at 2378. To the extent that plaintiffs' factual allegations suggest only that Johnson did not do his job well, they do not state a constitutional violation. *See, e.g., Doe v. Hennepin County*, Civil No. 4-84-115, slip op. at 11 (D.Minn. Dec. 6, 1985). Some of plaintiffs' allegations may, however, state a violation of a clearly established constitutional right: the parents' "fundamental 'liberty interest' in the care, custody, and management of their children.'" *Fitzgerald v. Williamson*, 787 F.2d 403, 407 (8th Cir.1986) (citations omitted). At this point in the litigation, without application of the record, it is not clear whether plaintiffs' allegations are sufficient under *Harlow*. The second step looks to the defendants' conduct in the particular situation. This is a factual inquiry into whether plaintiffs' allegations concerning defendants' conduct are true and, if so, whether defendant acted in an objectively reasonable manner under the circumstances. *See, e.g., Malley v. Briggs*, 106 S.Ct. at 1098. At this early stage in the litigation, there appear to be factual questions whether Johnson in fact violated plaintiffs' rights

---

3. Johnson's actions are part of an investigatory phase of the criminal process. Defendant Johnson's argument for absolute immunity rests on *Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984) and *Whelehan v. County of Monroe*, 558 F.Supp. 1093 (W.D.N.Y,1983). The *Kurzawa* and *Whelan* courts based their conclusion that held social workers should be entitled to absolute immunity on their concern with the possibility of retaliatory lawsuits. Courts in this district have previously rejected this argument.

*See In re Scott County*, 618 F.Supp. at 1565; *Doe v. Hennepin County*, slip op. at 15. Moreover, the Supreme Court has recently rejected such an argument in the context of civil rights actions against police officers. *See, e.g., Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). *See also Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984) (courts cannot extend absolute immunity to officers solely on basis of threatened retaliatory litigation).

and whether, if he did so, he acted reasonably and in good faith. In the light of these questions, dismissal would be premature at this time. Johnson is, of course, free to renew his motion to dismiss once the facts in this case are more well-developed.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motions to dismiss of defendants Clay County and Larry K. Mickelberg are granted.

2. The motion to dismiss of defendant Michael Johnson is denied without prejudice.