Argued and submitted October 23, 1987, affirmed in part; reversed and remanded in part October 12, Michael Tennyson's reconsideration and Children's Services Division's reconsideration denied November 25, 1988, both petitions for review allowed January 4, 1989 (307 Or 303)
See later issue Oregon Reports

# TENNYSON et al,
*Appellants,*

*v.*

# CHILDREN'S SERVICES DIVISION et al,
*Respondents.*

(A8502-01202; CA A40413)

762 P2d 333

Michael E. Kohlhoff, Wilsonville, argued the cause and submitted the briefs for appellants.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting in part.

## ROSSMAN, J.

Plaintiffs brought this action for negligence and violation of their civil rights under, respectively, the Oregon Tort Claims Act (OTCA), *former* ORS 30.260 *et seq*, and 42 USC § 1983. They allege that defendants violated their constitutional rights to freedom of speech under the First and Fourteenth Amendments, equal protection and due process under the Fifth and Fourteenth Amendments and the rights reserved to them under the Ninth and Tenth Amendments. They also allege that defendants violated the Adoption, Assistance and Child Welfare Act of 1980, 42 USC § 670 *et seq*. Defendants are the Children's Services Division (CSD), a division of the Department of Human Resources, and Evelyn Goldsby and Vern Welter, CSD caseworkers; Multnomah County; and Multnomah County Sheriff's Department Detective Robert Walliker. Plaintiffs appeal the trial court's granting of defendants' ORCP 21A(8) motion to dismiss their complaint.[1]

We take the facts as plaintiffs pleaded them. On January 9, 1984, Goldsby contacted plaintiff Colleen Tennyson (mother) concerning a report of bruises on Shannon, the oldest of her three children. Colleen told Goldsby that Shannon was physically awkward, played hard and consequently often bruised herself. She also stated that she and her sister, a nurse, had taken Shannon to a Well Child Clinic, where she had been told that the child bruises easily and that the bruises were no cause for concern. Goldsby told mother that the situation did not warrant taking Shannon into protective custody at that time. Mother, extremely upset by the manner in which Goldsby conducted the interview, called plaintiff Michael Tennyson (father). Father called CSD, asked for Goldsby (the pleadings do not reveal whether he spoke with her) and "complained bitterly" about the manner in which the interview had been conducted. In retaliation for the complaint, and without

---

[1] Plaintiffs' complaint contained two § 1983 claims. The first was pled under state concurrent jurisdiction and, in the alternative, the second was a claim under OTCA. Plaintiffs' second claim is for negligence. Although the complaint is not a model of clarity, and both parties argue about the role of negligence in § 1983 cases, we construe the claim as being for negligence. Plaintiffs appear to confirm this in their reply brief: "In fact, the second cause of action has been pled as a negligent [sic] claim, not the alternative civil rights causes of action."

sufficient investigation, CSD caused Walliker to seize Shannon from school and take her into protective custody on January 11. Before the seizure, defendants took no steps to eliminate the need to remove the child from the home; plaintiffs argue that that was a violation of the Adoption, Assistance and Child Welfare Act of 1980, 42 USC § 670 *et seq.*

At the preliminary hearing, on January 12, 1984, Walliker and Goldsby gave inaccurate testimony, according to plaintiffs. As a result, the juvenile court referee ruled that Shannon should be placed in foster care. While in foster care, she continued to bruise herself, including a two-inch bruise on her forehead. Father and mother were denied visitation for two weeks and were granted only limited visitation after that. On February 10, 1984, plaintiffs were allowed to bring Shannon home. Welter advised them that no future interference with their custody would occur without notice and that the child would not be subjected to a second seizure.

On February 16, defendants again seized Shannon from school without first contacting plaintiffs. On February 17, a second hearing was held, at which plaintiffs were arrested for criminal mistreatment in the first degree. The child was placed, first, in Waverly Children's Home and then in a foster home. Waverly reported that the child was clumsy, played hard and incurred several bruises while there. Defendants were aware of that exculpatory evidence but did not bring it to the attention of the court; it was later independently discovered by plaintiffs. Plaintiffs were not allowed to visit Shannon until April 10, 1984, almost two months later. They were then allowed one hour of supervised visitation per week. Father was acquitted of the charges on May 23, 1984; the charges against mother had been dismissed before that. On June 19, 1984, Shannon was returned home, more than four months after her removal.

Plaintiffs allege that defendants' investigation of the alleged abuse was inadequate in that they failed to obtain any psychological consultations until June, 1984; did not interview those who knew the family; did not interview the family physician; refused to attempt to corroborate plaintiffs' statements by readily available means and failed to seek alternatives to removing the child. Plaintiffs also allege that the

action of defendants in removing Shannon was taken in retaliation for father's exercise of his First Amendment rights.

Defendants moved to dismiss the complaint, ORCP 21A(8), contending that CSD workers have absolute immunity under § 1983 and discretionary immunity under ORS 30.265(3)(c).[2] The trial court granted defendants' motion and dismissed plaintiffs' claims against defendants without explanation.

■■ We turn first to defendants' claim of immunity under 42 USC § 1983. The availability of immunity under a § 1983 action brought under the OTCA is a matter of federal law. *Felder v. Casey,* 487 US ___, 108 S Ct 2302, 101 L Ed 2d 123 (1988); *Martinez v. California,* 444 US 277, 284 n 8, 100 S Ct 553, 62 L Ed 2d 481 (1980); *Rogers v. Saylor,* 306 Or 267, 760 P2d 232 (1988). Immunity may be either absolute or qualified. Absolute immunity protects all conduct within the scope of an official function protected by the immunity, even if it was motivated by bad faith or malice. *Briscoe v. LaHue,* 460 US 325, 345, 103 S Ct 1108, 75 L Ed 2d 96 (1982). Qualified immunity protects conduct taken in good faith which does not violate clearly established constitutional rights that a reasonable person would have known about. Qualified immunity is the norm. *Harlow v. Fitzgerald,* 457 US 800, 807, 818, 102 S Ct 2727, 73 L Ed 2d 396 (1982). The burden of establishing absolute immunity is on the official seeking it. *Butz v. Economou,* 438 US 478, 506, 98 S Ct 2894, 57 L Ed 2d 895 (1978).

Absolute immunity is generally available only for functions which are "integral parts of the judicial process." *Briscoe v. LaHue, supra,* 460 US at 335. Absolute immunity has been applied to initiating prosecution and conducting state criminal cases, *Imbler v. Pachtman,* 424 US 409, 96 S Ct

---

[2] Defendants also argued that the Adoption, Assistance and Child Welfare Act does not support a private right of action under 42 USC § 1983, and that plaintiffs' claims based on actions taken after January 12, 1984, were barred, because after that date the child was under the exclusive jurisdiction of the juvenile court. Because of the grounds for our disposition, we need not address these contentions. Defendants also contended below that there is no tort of negligent investigation in Oregon. They do not assert this argument before us, and we do not reach it.

On appeal, defendants challenge plaintiffs' negligence claim on the ground that the statutes governing CSD provide that defendants owe plaintiffs no duty and, therefore, the claim for negligence should be dismissed, citing *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987). The argument is without merit.

984, 47 L Ed 2d 128 (1976), to initiating and prosecuting federal administrative proceedings, *Butz v. Economou, supra,* and to the testimony of witnesses on the record in the course of an adjudication. *Briscoe v. LaHue, supra,* 460 US at 334. The Supreme Court has denied absolute immunity to police officers who filed a complaint which caused an arrest warrant to issue, *Malley v. Briggs,* 475 US 335, 343, 106 S Ct 1092, 89 L Ed 2d 271 (1986); to federal prison disciplinary committee members, *Cleavinger v. Saxner,* 474 US 193, 205, 106 S Ct 496, 88 L Ed 2d 507 (1985); to public defenders, *Tower v. Glover,* 467 US 914, 923, 104 S Ct 2820, 81 L Ed 2d 758 (1984); and to judges in personnel matters. *Forrester v. White,* 484 US 219, 108 S Ct 538, 98 L Ed 2d 555 (1988).

Although § 1983 does not provide any immunity on its face, the Supreme Court has held that the statute was intended to include common law immunity when it is consistent with the policy and purposes of the statute. *Malley v. Briggs, supra,* 475 US at 340. In evaluating a claim of absolute immunity, courts first look at the intent of Congress in enacting § 1983, according immunity only for those functions which had absolute immunity at common law in 1871 when § 1983 was enacted. *Malley v. Briggs, supra,* 475 US at 339-340. If an official's position did not exist at the time of enactment of § 1983, courts look for the modern counterpart, using a functional analysis, and examining the actual responsibilities of the officer, not just the office or title. *Butz v. Economou, supra,* 438 US at 511-13. If the official's function was entitled to absolute immunity at common law, the question then becomes whether granting immunity is consistent with the history and purposes of § 1983. *Malley v. Briggs, supra,* 475 US at 340. At that point, a policy analysis is required.

The availability of absolute immunity for child protection workers has not been addressed by the United States Supreme Court, and lower federal courts have reached differing results. Because the question must be decided by a functional analysis, we must look to state law for the authority and function of such officials in Oregon. *See Austin v. Borel,* 830 F2d 1356, 1360 (5th Cir 1987).

Defendants contend that their actions in preparing for and initiating juvenile court proceedings are as connected to the judicial process as are prosecutors' preparation and

initiation of criminal cases. They argue that the filing of a juvenile court petition under ORS 419.484 is the functional equivalent of initiating a criminal prosecution and that all of CSD's activities after an allegation of abuse has been received concern whether to initiate a court proceeding. Plaintiffs contend that CSD workers are the functional equivalents of police officers, because their primary functions are investigating cases and testifying, and that their power to file a juvenile court petition is not enough to make them the functional equivalent of prosecutors.

ORS 419.482 provides:

"(1) Any person may file a petition in the juvenile court alleging that a child named therein is within the jurisdiction of the court as provided in ORS 419.476(1)."

Under ORS 419.484(1), the court itself may also order that a petition be filed. ORS 419.484(1) also provides:

"When the petition is filed by a peace officer, counselor, or employe of the Adult and Family Services Division or the Children's Service Division, it may be verified upon the information and belief of the petitioner and may be filed without prior direction or authorization of the court. When the petition is filed pursuant to direction of the court * * * it may be upon information and belief. In other cases the petition shall be on the personal knowledge of the petitioner."

Defendants' sole statutory basis for their argument is that they have the power to file a petition in juvenile court pursuant to ORS 419.484. They rely on *Imbler v. Pachtman, supra,* and lower federal court cases for the proposition that the power to file the petition and thus to initiate the action, gives them absolute immunity for the filing and all their activities in the scope of an investigation.

In *Butz v. Economou, supra,* the Supreme Court held that the role of some administrative agency officials is analogous to that of prosecutors:

"The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought. The Commodity

Futures Trading Commission, for example, may initiate proceedings whenever it has 'reason to believe' that any person 'is violating or has violated any of the provisions of this chapter or of the rules, regulations, or orders of the Commission.' 7 USC § 9 (1976 ed). A range of sanctions is open to it." 438 US at 515.

More recently, in *Malley v. Briggs, supra,* the Supreme Court held that a police officer who had the power to file a complaint which would cause an arrest warrant to issue was not entitled to absolute immunity. The officer analogized his position to that of a common law complaining witness who procured issuance of an arrest warrant by filing a complaint. The court rejected the argument, because complaining witnesses were not absolutely immune at common law. 475 US at 340. The officer also compared himself to a prosecutor seeking an indictment. The court stated:

"We reemphasize that our role is to interpret the intent of Congress in enacting § 1983, not to make a freewheeling policy choice, and that we are guided in interpreting Congress' intent by the common-law tradition. In *Imbler, supra,* [424 US at 437] we concluded that at common law '[t]he general rule was, and is, that a prosecutor is absolutely immune from suit for malicious prosecution.' We do not find a comparable tradition of absolute immunity for one whose complaint causes a[n arrest] warrant to issue. While this observation may seem unresponsive to petitioner's policy argument, it is, we believe, an important guide to interpreting § 1983. Since the statute on its face does not provide for *any* immunities, we would be going far to read into it an absolute immunity for conduct which was only accorded qualified immunity in 1871." *Malley v. Briggs, supra,* 475 US at 342. (Citations omitted; emphasis in original.)

The Court noted that the officer applying for a warrant was further removed from the judicial process than a prosecutor seeking an indictment. *Malley v. Briggs, supra,* 475 US at 342-3.

The Fifth Circuit has recently applied that analysis to a Louisiana child protection statute which gave child protection workers the power to file a written verified complaint "showing reasonable grounds to believe that the child is abused, neglected or in need of care and that the immediate removal of the child is necessary for his protection from further abuse or neglect." *Austin v. Borel, supra,* 830 F2d at 1357;

*see* La Rev Stat Ann § 14:403(G)(6). After the filing of a complaint, the juvenile court may issue an order directing that the child be removed from the custody of the parents immediately. However, the actual adjudication of either a criminal prosecution or a need of care proceeding begins only after filing of a petition by the district attorney or, with leave of court, any other person. *Austin v. Borel, supra,* 830 F2d at 1360-1; La Code Juv Proc Ann art 45, 49 (1987). The court held that the filing of the verified complaint was analogous to the complaint in *Malley* and denied immunity. *Austin v. Borel, supra,* 830 F2d at 1362.

Plaintiffs argue that the primarily investigatory duties of CSD workers makes them more analogous to police officers than to prosecutors and that the ability to file a petition does not change that status. ORS 419.482 provides that "any person" may file a petition, which arguably makes that filing more analogous to the complaints in *Malley* and *Austin v. Borel.* However, unlike under the Louisiana statute, under ORS 419.482 no additional step is necessary for an adjudication in juvenile court to take place, once the complaint is filed. *Meyers v. Contra Costa County Dept. of Soc. Serv.,* 812 F2d 1154 (9th Cir 1987), concerned a social worker who supervised an investigation of child abuse and then filed dependency petitions with juvenile court. The court stated:

> "Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from that of the criminal prosecutor. The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children." 812 F2d at 1157.

We conclude that a petition does in fact initiate the action and the power of CSD workers to file a petition makes them the functional equivalent of prosecutors for immunity purposes. This holding is consistent with the conclusions of most courts which have addressed the issue of immunity for child protective workers. *See Coverdell v. Dept. of Social and Health Services,* 834 F2d 758, 763 (9th Cir 1987); *Malachowski v. City of Keene,* 787 F2d 704 (1st Cir 1986); *Whelehan v. County of Monroe,* 558 F Supp 1093 (WD NY 1983).

Accordingly, we must decide whether policy considerations support the grant of absolute immunity to defendants. *Malley v. Briggs, supra,* 475 US at 340. Defendants cite the considerations set out in *Imbler v. Pachtman, supra:*

"The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences of his own potential liability in a suit for damages. * * * Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation." 424 US at 424.

Defendants contend that, just as fear of being sued might make a prosecutor hesitant to prosecute, CSD workers might err on the side of their own legal safety rather than exercise their independent judgment for the safety of children. Plaintiffs argue that, without review by an independent prosecutor, the rationale for absolute immunity is weakened, because liability is a necessary check on potential abuse of authority. Other checks on abuse of authority may be weaker as well.

Unlike the enforcement proceeding in *Butz v. Economou, supra,* above, in an Oregon juvenile proceeding a party may not have "ample time to challenge the legality of the proceeding itself," because ORS 419.486 provides that a hearing on the petition must take place within 24 hours after the summons is issued. Prosecutors also have checks on their authority which CSD workers do not. In granting absolute immunity to prosecutors, the Supreme Court recognized that their actions are constrained by professional discipline:

"[A] prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers." *Imbler v. Pachtman, supra,* 424 US at 429.

In denying absolute immunity to a police officer, the Court stated that the absence of a "comparably well developed and pervasive mechanism for controlling police misconduct" comparable to discipline of prosecutors by the organized bar weighed against allowing immunity. *Malley v. Briggs, supra,* 475 US at 343 and n 5. The Court also distinguished the officer's role in filing the complaint from the prosecutor's role, stating that the prosecutor was a central actor in the judicial process whose performance in every phase of his work could be

impaired by possible liability. 475 US at 343. Those considerations also weigh against granting absolute immunity to CSD workers.

Moreover, absolute immunity is a two-edged sword. It protects both reckless or bad faith actions and bad faith inaction, the failure to protect children known to be at risk. Defendants contend that, without absolute immunity, CSD workers will fail to act; however, others have argued that absolute immunity is necessary to prevent child protective workers from charging parents with abuse just to avoid the possibility of being subjected to liability for failure to prevent abuse. *Note,* "Government Liability for Failure to Prevent Child Abuse: A Rationale for Absolute Immunity," 27 *BCL Rev* 949, 982 (1986). Plaintiff notes that the legislature, in evaluating considerations such as these, has decided that reports of child abuse are immunized only when made in good faith with reasonable grounds. ORS 418.762; *Franson v. Radich,* 84 Or App 715, 721, 735 P2d 632 (1987). In addition, the risk of bad faith action on the part of CSD workers falls on children as well as their parents. In this case, plaintiffs allege that their daughter was not allowed to see them for a two-month period and then for two months was only allowed to see them for an hour each week. In the meantime, she was placed in at least two foster care settings.

Finally, as the Supreme Court has stated, a lack of absolute immunity does not deprive officials of protection:

> "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law. * * * The *Harlow* standard is specifically designed to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment,' and we believe it sufficiently serves this goal." *Malley v. Briggs, supra,* 475 US at 341.

Qualified immunity would not protect defendants if, on an objective basis, it were obvious that no reasonably competent CSD worker would have concluded that a child was being abused; if CSD workers of reasonable competence could disagree on this issue, immunity would be recognized. *Malley v. Briggs, supra,* 475 US at 341.

However, defendants argue that the risk of interference with the exercise of CSD workers' judgment is more

significant, because it is the health and safety of children that is at risk. They argue that the policy reasons for the extension of immunity to CSD workers is greater than for prosecutors. They suggest that, when a prosecutor fails to act for fear of retaliatory lawsuits, the resulting risk is diffuse, affecting the public at large. When child abuse is involved, however, the risk is specific—particular children are subjected to a known risk. Defendants cite the reasoning of a New York federal District Court:

> "The great importance of the child protective function served by these defendants is beyond question. If these defendants, and others who serve like functions in society, were forced to execute their duties with one eye constantly regarding the possibility of incurring liability for their conduct, the detriment to society and the judicial system would be at least as great as if they were prosecutors of the kind specifically protected by *Imbler* [*v. Pachtman, supra*]. In *Butz v. Economou, [supra]*, * * * the Court * * * reasoned that 'there is a serious danger that the decision to authorize proceedings will provoke a retaliatory response' * * * and that '[t]he defendant in an enforcement proceeding has ample time to challenge the legality of the proceeding itself' and to 'present his evidence to an impartial trier of fact and obtain an independent judgment as to whether the prosecution is justified.' [438 US at 515-6.] All these considerations and conclusions are fully justified in the instant case.

> "* * * * *

> "Upon reviewing the relevant provisions of New York's Family Court Act and Social Services Law, I conclude that a social services worker is indeed called upon to exercise discretion at crucial points in cases of suspected child abuse or neglect—*i.e.,* in deciding whether the available information warrants removal of a child from the home either by order of a court or as an emergency measure, and the filing of a petition charging child abuse and neglect, thereby initiating court proceedings. If social services workers were required to guard against possible section 1983 claims arising from such decisions, their evaluation of the information at hand could easily be colored and, it may be expected, sometimes at the expense of the life or well-being of abused or neglected children. Such a result cannot be countenanced for the administration of remedial child protective laws any more than for prosecutors' enforcement of the criminal law." *Whelehan v. County of Monroe, supra,* 558 F Supp at 1098.

The importance of the CSD worker's function is highlighted by the fact that "any public or private official having reasonable cause to believe that any child whom the official comes in contact with in an official capacity has suffered abuse" must make a report to CSD or the police. ORS 418.750. The legislature recognized the chilling effect that the possibility of liability would have on such individuals, who are much further removed from the process of investigating abuse reports and deciding upon a course of action than are CSD workers, and granted them good faith immunity. ORS 418.762.

Child protection workers are confronted with unique difficulties in performing their duties. One commentator has summarized some of the problems identified in the literature:

"In investigating child abuse reports, workers are often confronted with inconsistent and incomplete evidence. For example, a parent may explain a child's injury as resulting from some cause other than child abuse. Medical evidence may establish, however, that the injury could not have occurred as the parent explained. Nevertheless, the evidence may not establish conclusively that the cause of the injury was abuse. In addition, because child abuse frequently occurs in the privacy of the family home, there are often no independent witnesses to question. Furthermore, abusing families often conceal information from child protection workers during child abuse investigations. Due to the lack of conclusive evidence available during child abuse investigations, child protection workers face difficult decisions in determining whether children actually have suffered abuse. The child protection worker must weigh the available evidence and based on professional judgment, make a determination as to whether or not a child has been abused." *Note,* "Government Liability for Failure to Prevent Child Abuse: A Rationale for Absolute Immunity," 27 *BCL Rev* 949, 980 (1986). (Footnotes omitted.)

The professional judgment of a CSD worker is critical. On the basis of possibly incomplete information, she must make a difficult decision with important consequences for the well being of children and families. Whether the fear of liability would make a particular CSD worker more likely or less likely to use drastic intervention methods such as removing a child from the home, it would cloud the exercise of professional

judgment.[3] That is a result that absolute immunity would avoid.

Moreover, we think it likely that cases in which CSD workers act with gross negligence are outnumbered by the number of cases in which their intervention to protect a child will infuriate the parents involved. "The outrage and frustration that arises when the state intervenes in matters of family intimacy is obvious." *Hennessey v. Washington,* 627 F Supp 137, 140 (ED Wash 1985). An allegation of bad faith on the part of CSD workers may easily be made and difficult to rebut. We note that the allegations of bad faith in this case cover a course of conduct extending over a period of several months and must, to be actionable even under qualified immunity, hang from the thread of a single phone call in which father vented his frustration about CSD's conduct. Defendants' argument that this is really a negligent investigation case bootstrapped into an intentional tort is not without support in the record. If CSD workers are denied absolute immunity, every decision by those workers which is followed by a determination that there was insufficient evidence of abuse may lead to a § 1983 action.

Finally, we note that absolute immunity would not leave injured parties without redress. Parents must have an opportunity to be heard within 24 hours after the summons to seize a child is issued. ORS 419.486. Parents may have court-appointed counsel, ORS 419.498, and have access to judicial review. Further, CSD workers are subject to discipline by their superiors.

---

[3] OTCA requires that public bodies defend and indemnify their employes against all tort claims arising out of the performance of their duties, except for claims involving "malfeasance in office or wilful or wanton neglect of duty." ORS 30.285. The Supreme Court has stated, in connection with a question of immunity under ORS 30.265(3):

> "The legislature has thus eliminated the reasons for concern that the prospect of personal liability might dampen the ardor of public employes in the performance of their duties or discourage able persons from accepting responsible employment in the public sector. To the extent that a public employe's job performance may be influenced by concern about possible liability for 'malfeasance in office or willful or wanton neglect of duty' the influence is likely to be a salutary one." *Stevenson v. State of Oregon,* 290 Or 3, 13, 619 P2d 247 (1980).

However, *Stevenson* concerned immunity under state law and did not address the unique situation of CSD workers.

We conclude that preserving the independence of CSD workers is the critical factor and that absolute immunity is most likely to prevent both overzealousness and overcaution in their approach to a report of potential abuse. Accordingly, we hold that CSD workers are entitled to absolute immunity under § 1983 for actions taken within the scope of their duties in connection with initiating an action for child abuse:

> "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought * * * better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Imbler v. Pachtman, supra,* 424 US at 428.

In reaching this result, we are in accord with the majority of federal courts that have addressed the question. *See Coverdell v. Dept. of Social and Health Services, supra; Meyers v. Contra Costa County Dept. of Soc. Serv., supra; Malachowski v. City of Keene, supra; Whelehan v. County of Monroe, supra. Contra: Austin v. Borel, supra; Czikalla v. Malloy,* 649 F Supp 1212 (D Col 1986); *Pinkney v. Clay County,* 635 F Supp 1079 (D Minn 1986); *Doe v. County of Suffolk,* 494 F Supp 179 (ED NY 1980).

Plaintiffs contend that, even if defendants are entitled to absolute immunity for their actions in connection with bringing the juvenile court proceeding, they are liable for their actions taken before that. Plaintiffs argue that prosecutors are not absolutely immune for their investigative actions, unless the investigation is related to their decision to bring an action. However, prosecutors are generally entitled to absolute immunity when their actions are based on individualized suspicion. *See Note,* "Immunizing the Investigating Prosecutor: Should the Dishonest Go Free or the Honest Defend?," 48 *Ford L Rev* 1110, 1125-33 (1980). Defendants contend that all actions by CSD workers after a report of potential abuse is received are based on individualized suspicion. We need not decide whether that is true, because plaintiffs' complaint alleges that defendants' actions were retaliatory in nature, and it appears from the complaint that nothing but individualized suspicion was involved in this case. Neither was the alleged conduct of the CSD workers here beyond the scope of their quasi-judicial role. *See Meyers v. Contra Costa County, supra,* 812 F2d at 1157-8.

■   Defendants are also entitled to absolute immunity under § 1983 for their actions taken within the scope of their function as witnesses in a judicial proceeding. Such witnesses are entitled to absolute immunity, even for perjured testimony. *Briscoe v. LaHue, supra,* 460 US at 345-6.

■   We now turn to plaintiffs' state law negligence claim. Defendants assert that dismissal of that claim should be affirmed, because they have discretionary immunity under ORS 30.265(3)(c). They make that claim on the basis of ORS 419.569(1), which provides that "a child *may* be taken into temporary custody * * * where the child's condition or surroundings reasonably appear to be such as to jeopardize the child's welfare." (Emphasis supplied). Defendants contend that any action taken pursuant to that statute is discretionary, because the statute uses language of discretion. Plaintiffs argue that the relevant CSD manual provisions deprived the defendants of discretion. However,

> "the question under ORS 30.265(3)(c) is not the 'discretionary' nature of the overall function of the public body but the degree of discretion, if any allowed the individual defendant whose immunity is at issue. The question of immunity is not whether the function as a whole involves 'room for policy judgment' but whether the defendant had been delegated responsibility for a policy judgment and exercised such responsibility in the act or omission alleged to constitute the tort." *Bradford v. Davis,* 290 Or 855, 865 626 P2d 1376 (1981).

Defendants cite *Batten v. Corrections Division et al,* 84 Or App 242, 733 P2d 915, *rev den* 303 Or 454 (1987), for the proposition that discretion under the statute is determinative, regardless of whether any rules were promulgated under the statute to provide discretion to the individual employees. *Batten* does not so hold. There, the actions in question were based on administrative rules providing some discretion to the employees. Whether discretion exists here cannot be determined from the face of the complaint. Immunity under OTCA is normally an affirmative defense, and dismissal under ORCP 21 is not appropriate. Defendants concede that a fact question exists as to whether defendants' actions met the reasonableness standard of ORS 419.569(1).

Because of our disposition of this appeal, we need not reach defendants' remaining grounds for dismissal.

Affirmed as to dismissal of the § 1983 claim; reversed as to dismissal of negligence claim.[4]

**BUTTLER, P. J.,** dissenting in part.

Although I agree with the majority's general analysis of the problem and with its holding that discretionary immunity under OTCA presents a fact question, I disagree that defendants are absolutely immune from liability under 42 USC § 1983.

In short, I think that the functions of CSD workers are closer to those of police officers (who have qualified immunity) than they are to prosecutors (who have absolute immunity). The majority's holding that "the power of CSD workers to file a petition makes them the functional equivalent of prosecutors for immunity purposes," 93 Or App at 374 is not persuasive. ORS 419.482(1)[1] permits *any* person to file a petition with the same legal consequences. Is everyone who files a petition entitled to absolute immunity? Furthermore, ORS 418.750[2] *requires* any public or private official having reasonable cause to believe that a child has suffered abuse to report that fact to CSD or to a law enforcement agency. Anyone participating in good faith in the making of such a report has only qualified immunity. ORS 418.762;[3] *see Franson v. Radich,* 84 Or App 715, 735 P2d 632 (1987).

---

[4] No party raises on appeal whether the dismissal of the claim against Goldsby and Welter necessitates dismissal of the same claims against CSD. Accordingly, we do not reach that question.

[1] ORS 419.482(1) provides:

"Any person may file a petition in the juvenile court alleging that a child named therein is within the jurisdiction of the court as provided in ORS 419.476(1)."

[2] ORS 418.750 provides:

"Any public or private official having reasonable cause to believe that any child with whom the official comes in contact in an official capacity has suffered abuse, or that any person with whom the official comes in contact in an official capacity has abused a child shall report or cause a report to be made in the manner required in ORS 418.755. Nothing contained in ORS 40.225 to 40.295 shall affect the duty to report imposed by this section, except that a psychiatrist, psychologist, clergyman or attorney shall not be required to report such information communicated by a person if the communication is privileged under ORS 40.225 to 40.295."

[3] ORS 418.762 provides:

"Anyone participating in good faith in the making of a report pursuant to ORS 418.750 to 418.760 and who has reasonable grounds for the making thereof, shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed with respect to the making or content of such report. Any such participant shall have the same immunity with respect to participating in any judicial proceeding resulting from such report."

Even if the majority were correct that CSD workers are the equivalent of prosecutors, I do not agree that policy considerations require granting them absolute immunity. I believe that the qualified immunity applicable in § 1983 cases, as enunciated by the United States Supreme Court, affords them adequate protection:

"Under the Harlow standard, on the other hand, an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. The Harlow standard is specifically designed to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment,' and we believe it sufficiently serves this goal. Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but *if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs,* 475 US 335, 341, 106 S Ct 1092, 89 L Ed 2d 271 (1986). (Emphasis supplied.)

To conclude, as the majority does, that absolute immunity under § 1983 is necessary to permit CSD workers to perform their duties effectively, even though they do not have absolute immunity under OTCA, does not make sense. If defendant's actions meet the reasonableness standard under ORS 419.569(1), they would also meet the standard for qualified immunity as applied under § 1983. If CSD workers will be gun-shy if they are not accorded absolute immunity under § 1983, their lack of immunity under OTCA will make them gun-shy.

Accordingly, I dissent from that part of the majority decision.